IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZURICH AMERICAN INSURANCE COMPANY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 24-1879** |
| | : | |
| **CITIZENS INSURANCE COMPANY OF AMERICA, BELFI BROS. AND COMPANY, INC.** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                    September 13, 2024

A general contractor on a construction project hires subcontractors to complete the assigned project. Both the general contractor and subcontractor purchase liability insurance. The general contractor requires the hired subcontractor to identify the general contractor as an "additional insured" on the subcontractor's insurance. The subcontractor's employees perform services at the Pennsylvania job site. If subcontractor's employee is injured on site, the Pennsylvania Workers' Compensation Act bars the employee from suing the employer subcontractor. So the injured employee instead sues the general contractor for negligence in state court. And the general contractor looks to the subcontractor for insurance coverage. We today address whether the subcontractor's insurer must cover the general contractor's costs of defending the employee's negligence case. We study the four corners of the "additional insured" policy language and the employee's allegations. Our Court of Appeals and several colleagues offer thoughtful guidance. The employee's state court allegations sufficiently trigger the obligations of the subcontractor's insurer to pay the general contractor's costs of defending the employee's case. We enter judgment on the pleadings, declaring the subcontractor's insurer must reimburse for earlier costs and cover current fees and costs necessary to defend the general contractor in the employee's case. We dismiss the remaining claim for indemnity as not ripe.

I.  **Background**

Southeastern Pennsylvania Transportation Authority hired general contractor James J. Anderson Company, Inc. to perform construction work on the Susquehanna-Dauphin Broad Street line station.[1] General contractor Anderson Construction purchased general liability insurance for its protection from Zurich American Insurance Company.[2]

General contractor Anderson Construction hired Belfi Bros. and Company, Inc as a tiling subcontractor.[3] Subcontractor Belfi agreed to maintain commercial general liability insurance and name general contractor Anderson Construction as an additional insured for its work on SEPTA's job on a primary non-contributory basis.[4] Belfi bought insurance from Citizens Insurance Company of America.[5] It identified Anderson Construction as an additional insured.[6] Citizens agreed to provide coverage for Anderson Construction to recover as an additional insured: (1) for injuries "caused, in whole or in part, by" Belfi's "acts or omissions" or the "acts or omissions of those acting on [Belfi's] behalf; in the performance of [Belfi's] ongoing operations for [Anderson Construction]";[7] and (2) for injuries "caused, in whole or in part, by [Belfi's] acts or omissions, or the acts or omissions of those acting on [Belfi's] behalf but only with respect to . . . [Belfi's] work for the additional insured(s) designated in the contract, agreement or permit; . . . Premises [Belfi] own[s], rent[s], lease[s] or occup[ies]," or for "[Belfi's] maintenance, operation or use of equipment leased to [Belfi]."[8]

Enrico Panvini worked at SEPTA's job site for Belfi.[9] Mr. Panvini slipped while carrying the heavy part of a wet saw backwards down about thirty steps.[10] He sustained severe and permanent bodily injuries and losses.[11] He sued SEPTA, general contractor Anderson Construction, and John Does in the Philadelphia County Court of Common Pleas alleging their negligence caused his injuries and seeking damages.[12] He alleged his injuries occurred within the

2

scope of his employment with Belfi.[13] He also alleged general contractor Anderson Construction's agents and representatives failed to supervise the work, provide a safe work site, and provide a safety plan.[14] Mr. Panvini did not sue his Employer, Belfi.[15] Anderson Construction, through its insurer Zurich, asked Citizens to provide a defense as an additional insured under Belfi's insurance policy in Mr. Panvini's action on February 15, 2024.[16] Citizens declined to defend.[17]

## II.     Analysis

The general contractor's insurer Zurich now sues the subcontractor's insurer Citizens asking we declare Citizens has a duty to defend the general contractor in Mr. Panvini's ongoing negligence suit.[18] Zurich also asserts a claim for indemnification. The two insurers now cross-move for judgment on the pleadings as to Citizens' obligation to pay the costs of defense in Mr. Panvini's suit.[19]

Zurich argues its customer general contractor Anderson Construction qualifies as an additional insured under either of Citizens' additional insured endorsements because Mr. Panvini alleged Employer Belfi's acts or omissions potentially caused his injuries in his negligence case.[20] Citizens responds general contractor Anderson Construction does not qualify as an additional insured because Mr. Panvini did not allege Employer Belfi's acts or omissions potentially caused his injuries.[21]

We grant Zurich's Motion and deny Citizens' Motion. Mr. Panvini alleged Employer Belfi's acts or omissions potentially caused his injuries. Subcontractor Belfi's insurer Citizens must defend general contractor Anderson Construction as an additional insured on Belfi's insurance policy issued by Citizens.

### A.  We construe Mr. Panvini's allegations in favor of Anderson Construction.

Citizens has a duty to defend general contractor Anderson Construction if Mr. Panvini's underlying negligence complaint alleges Employer Belfi is "in whole or in part" responsible for his injuries.[22] We resolve this issue by comparing Mr. Panvini's allegations to the language of the Citizens policy.[23] Citizens must defend Anderson Construction if Mr. Panvini's negligence allegations potentially support recovery under the policy.[24]

An insurer's duty to defend under Pennsylvania law "is a distinct obligation" "different from and broader than the duty to indemnify."[25] Determining whether an insurer has a duty to defend requires defining the scope of coverage under the insurance policy on which the insured relies and comparing it to the employee's allegations.[26] We construe ambiguities in the Citizens policy "in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage."[27]

The Pennsylvania Supreme Court counsels, "[i]f the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover."[28] "[A]n insurer has a duty to defend if there is any possibility that its coverage has been triggered by allegations in the underlying complaint."[29] Judges applying Pennsylvania law follow the "four corners" or "eight corners" rule, which limits an insurer's potential duty to defend to solely the "allegations of the complaint in the [underlying] action."[30]

We do not look outside Mr. Panvini's allegations or consider extrinsic evidence.[31] We view as true and liberally construe Mr. Panvini's allegations in general contractor Anderson Construction's favor to determine whether the allegations trigger Citizens' duty to defend Anderson Construction.[32]

4

      **B. We must account for the fact Mr. Panvini cannot sue Belfi in state court while applying the four corners interpretative rule.**

Mr. Panzini did not sue his Employer, Belfi, in state court. His underlying allegations do not directly attribute fault to Citizens' insured (Belfi). We must account for the Pennsylvania Workers' Compensation Act when analyzing Mr. Panvini's allegations (or lack thereof) about Employer Belfi in the underlying complaint.

The Workers' Compensation Act is an injured worker's exclusive remedy against his or her employer.[33] The Pennsylvania General Assembly prevents Mr. Panvini from suing Belfi. This limitation impacts an insurer's duty to defend. Our Court of Appeals instructed in *Ramara, Inc. v. Westfield Ins. Co.* "where the Workers' Compensation Act is relevant to a coverage determination, insurers (and the courts that review their determinations) must interpret the allegations of an underlying complaint recognizing that the plaintiff's attorney in the underlying action drafted the complaint taking the existence of the Act into account."[34]

Our awareness of the Act's impact on Mr. Panvini's underlying negligence claim does not violate Pennsylvania's four corners rule.[35] As our Court of Appeals directed in *Ramara*, "[t]he four corners rule . . . does not permit an insurer to make its coverage decision with blinders on, disclaiming any knowledge of coverage-triggering facts."[36] Our colleagues consistently account for the Workers' Compensation Act when an insured subcontractor's employee is injured, the employer subcontractor is immune from suit under the Act, and the duty to defend is at issue.

Judge Robreno's analysis in *Liberty Mutual Fire Ins. Co. v. Harleysville Worcester Ins. Co.* is illustrative.[37] Like here, the general contractor's insurer sued the subcontractor's insurer seeking a declaratory judgment the subcontractor's insurer had a duty to defend the general contractor.[38] The subcontractor's employee sustained injuries on the job and the subcontractor's insurer declined to defend the general contractor.[39] Applying the facts of *Ramara*, Judge Robreno noted

because "direct employers are immune from tort claims for workplace injuries of their employees, the plaintiff's attorney in the underlying action in *Ramara* would not have drafted the complaint to include [the subcontractor], regardless of whether the damages were caused by [the subcontractor]."[40] We are viewing the same issue.

We draw contrast to the distinct facts Judge Hey addressed in *Cincinnati Ins. Co. v. Colony Ins. Co*. There, the general contractor's insurer sued a subcontractor's insurer to defend the general contractor in an underlying action involving injuries sustained by a ***different*** subcontractor's employee.[41] Neither of the insurers had a relationship with the injured employee's subcontractor.[42] Judge Hey concluded our Court of Appeals's concerns about the Workers' Compensation Act in *Ramara* were inapplicable.[43]

The facts of our case track the facts of *Ramara* and *Liberty*. Mr. Panvini worked for Belfi, Anderson Construction's subcontractor. He sustained his injuries while working for Belfi at a job site where Anderson Construction was the general contractor. The Workers' Compensation Act bars Mr. Panvini from suing Belfi.[44] We can infer in the absence of the Act Mr. Panvini would have pleaded more detail concerning Belfi's negligence in his underlying complaint.[45] We bear this in mind as we address whether Mr. Panvini's allegations require Citizens to defend Anderson Construction.

### C. Mr. Panvini pleads facts confirming Belfi's conduct proximately caused his injury.

Citizens agreed to defend general contractor Anderson Construction for bodily injury "caused, in whole or in part, by" "[Belfi's] acts or omissions" or "the acts or omissions of those acting on [Belfi's] behalf; in the performance of [Belfi's] ongoing operations for the additional insured."[46] We must determine whether Belfi's conduct was a but-for or proximate cause of Mr. Panvini's injuries entitling Anderson Construction to a defense in Mr. Panvini's underlying case.[47]

6

Our Court of Appeals applies proximate causation instead of but-for causation in duty to defend cases because "a proximate cause requirement is more demanding than a but-for cause requirement – meaning that allegations satisfying the former necessarily will satisfy the latter[.]"[48] "Proximate causation is defined as a cause which was 'a substantial factor in bringing about . . . the harm.'"[49] Proximate causation is a "limiting principle that functions as 'shorthand for the policy-based judgment that not all factual causes contributing to an injury should be legally cognizable causes.'"[50]

An employee in a duty to defend case sufficiently pleads proximate causation when he or she alleges: (1) the general contractor acted "through its agents, servants, and/or employees"; and (2) some other failure, such as failure "to provide and require that equipment be used in accordance with industry standards," failure "to inspect the work," failure to "hire competent contractors and subcontractors," or failure to "supervise the construction work."[51] In other words, if Mr. Panvini "was injured during the course of his normal duties at the job site, and the injury was caused by the acts or omission of [Anderson Construction's] . . . subcontractors – of which [Belfi] was one – these allegations raise at least the potential that [Belfi's] conduct was a proximate cause of his injuries."[52]

We agree with Zurich and find Mr. Panvini's allegations satisfy both steps outlined by our Court of Appeals in *Ramara*. Mr. Panvini's allegations raise the potential Belfi's conduct proximately caused his injuries.

### a. General contractor Anderson Construction acted through its subcontracted agents.

To sufficiently allege proximate causation as to his or her employer an injured employee first must plead the general contractor acted through its agents, servants, or employees. The absence of the employer's name in the underlying complaint is not dispositive because we

7

recognize "the plaintiff's attorney in the underlying action drafted the complaint taking the existence of the [Workers' Compensation] Act into account."[53] And the Act limits the types of allegations an employee can bring against his or her employer.[54] If the employer's contractual relationship with the general contractor could be interpreted to fall within the category of "agent," "servant," or "employee," the employee need not explicitly name the employer as the cause of the injury.[55] The salient question is "whether [the employer Belfi] could potentially be implicated given the allegations in the underlying complaint."[56]

Mr. Panvini alleged general contractor Anderson Construction acted "by and through its agents, servants, workmen, employees and/or other representatives acting within the course and scope of their employment, agency and/or service for the same . . . ."[57] Zurich argues Anderson Construction is entitled to a defense from Citizens because Belfi (Citizens' insured) was Anderson's tile subcontractor.[58] Though Citizens points out Mr. Panvini did not explicitly refer to Belfi as a "subcontractor" of Anderson Construction in his underlying complaint, the parties do not dispute Belfi's subcontractor status.[59] And the exact nature of Belfi's contractual relationship with Anderson Construction is irrelevant. Mr. Panvini alleged Anderson Construction hired Belfi to perform construction work at the Susquehanna-Dauphin subway station.[60] Our Court of Appeals instructs it is Belfi's possible implication in Mr. Panvini's injury, and not the precise terms of its contractual relationship with Anderson Construction, which informs our duty to defend analysis.[61] We find Mr. Panvini sufficiently alleged Belfi was an agent, servant, or employee of Anderson Construction and proceed to the second step of the proximate causation analysis.

    b. **Mr. Panvini alleged Belfi's negligence.**

Our second step is to study whether Mr. Panvini alleged negligence implicating his Employer Belfi although he could not sue Belfi itself. An employee injured on a job site must also

8

plead negligence possibly attributable to his or her employer to allege proximate causation triggering the employer's insurer's duty to defend. Zurich and Citizens dispute whether Mr. Panvini's allegations of negligence satisfy this requirement. We again look to our Court of Appeals's analysis in *Ramara* and thoughtful decisions by colleagues for guidance.

The injured employee in *Ramara* alleged the garage owner for whom the employer was a subcontractor "failed to provide and require that equipment be used in accordance with industry standards," failed to "employ field personnel, project supervisors and safety inspectors to inspect the work," failed to "hire competent contractors and subcontractors," failed to "supervise the construction work," failed to "coordinate with the other entities and subcontractors on the premises," and failed to "enforce a site specific fall protection plan."[62] Our Court of Appeals found the subcontractor (plaintiff's employer) proximately caused the employee's injury because his "employment by [the subcontractor] was the sole reason . . . [he] was at the job site and was injured."[63] Our Court of Appeals concluded the subcontractor's insurer had a duty to defend the garage owner in the employee's lawsuit.[64]

We also look to Judge Surrick's analysis in *Zurich Am. Ins. Co. v. Indian Harbor Ins. Co.* where a subcontractor's employee was injured on a job site and alleged the building owner and its agents failed to maintain the premises, to inspect and supervise the dangerous conditions, to maintain proper barrier equipment, to warn of danger, and to properly surprise or provide proper safety management.[65] Judge Surrick found the subcontractor's insurer had a duty to defend the building owner.[66] Judge Robreno came to a similar conclusion in *Liberty* where a subcontractor's injured employee alleged the general contractor and its agents failed "to require contractors, subcontractors and other entities working at the project to the protect against the risk of injuries," to "properly supervise the project," and to "properly train and supervise its employees," and "had

9

actual notice of unsafe and dangerous condition of the premises and sufficient time to correct the dangerous situation."[67] Judge Robreno found the subcontractor's insurer had a duty to defend the general contractor.[68]

Mr. Panvini alleged general contractor Anderson Construction failed to supervise and regulate the work as it was performed.[69] He alleged Anderson Construction failed "to adequately warn workers assisting in the construction project of the attendant dangers thereto," "provide plaintiff a safe place to work," "properly plan, supervise and regulate the work as it was being performed," and "to implement an adequate safety program."[70]

Citizens argues these allegations are insufficient to support proximate cause. It submits the duty to defend is only triggered when the general contractor failed to *supervise* its subcontractors, and the supervisors were in turn negligent.[71] Citizens claims Mr. Panvini's allegations are insufficient because he did not plead Anderson Construction failed to supervise its subcontractors or the subcontractors acted negligently; he instead only alleged ***Anderson Construction*** acted negligently. According to Citizens, Mr. Panvini's "boilerplate allegations" Anderson Construction acted "through its agents, servants, and employees" (i.e., Belfi) is not enough for us to conclude Belfi proximately caused Mr. Panvini's injury.

We disagree. First, we are not convinced the duty to defend is only triggered when a general contractor had a duty to supervise its subcontractors, who were in turn negligent. As our Court of Appeals instructs, Anderson Construction (through Zurich) only needs to show Mr. Panvini's injury arose during his normal duties at the job site, and the acts or omissions of Anderson Construction's subcontractors caused his injury.[72] Mr. Panvini plainly pleads facts sufficient to establish injury during the course of his normal job duties. And Mr. Panvini's "employment by [Belfi] was the sole reason . . . [he] was at the job site and was injured."[73] Second, even under

10

Citizens' interpretation requiring a failed duty to supervise, Mr. Panvini alleges Anderson Construction did not supervise the work as it was performed.[74] We are persuaded by the reasoning in *Ramara*, *Indian Harbor*, and *Liberty* confirming allegations a general contractor failed to supervise the work is equivalent to failing to supervise subcontractors.

We follow our Court of Appeals's approach and find Mr. Panvini's "factual allegations . . . potentially would support a conclusion that [his] injuries were 'caused, in whole or in part' by [Belfi's] acts or omissions."[75]

### D. Zurich provides excess coverage for general contractor Anderson Construction.

Zurich argues it provides only excess coverage to general contractor Anderson Construction because Citizens provides primary coverage.[76] Citizens does not challenge the primary or excess coverage issue.

Insurance policies are generally divided into two levels of coverage: primary and excess.[77] Primary insurers are liable when there is an injury within the scope of the policy.[78] Excess insurers are not liable until the primary insurance has been exhausted.[79] "Other insurance" provisions in policy contracts allocate responsibility for multiple insurers when primary and excess coverage is an issue.[80] Zurich defines when its coverage is excess.[81] Zurich provides excess coverage when "[a]nother primary insurance available to [general contractor Anderson Construction] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [Anderson Construction has] been added as an additional insured . . . ."[82]

Zurich provides excess insurance coverage because general contractor Anderson Construction qualifies as an additional insured under the Citizens policy. Citizens provides primary coverage for Anderson Construction. Zurich's coverage will be triggered only when Citizen's coverage is exhausted.[83]

## III.    Conclusion

We grant Zurich's motion requiring we declare Citizens must tender a defense to Anderson Construction through final order in Mr. Panvini's negligence claim.  Citizens must also reimburse for all defense costs paid to date on Belfi's behalf consistent with its agreement with Belfi. We find it unnecessary to address Zurich's alternative relief asking us to declare Belfi has a duty to defend Anderson Construction.

The issues on indemnity obligations are not ripe and we dismiss them without prejudice.[84]

---

[1] ECF 22 ¶¶ 3, 7, 13. We assume, without deciding, Belfi acted as a subcontractor for Anderson Construction because the parties do not dispute this fact. *See, e.g.*, ECF 22-1 at 19 (referring to Belfi as a "tile subcontractor" for Anderson Construction); ECF 23-1 at 2 (describing the "Subcontract" between Belfi and Anderson Construction).

[2] ECF 22 ¶ 11. The Zurich Policy is excess coverage when primary coverage is in place. *Id.* ¶ 22.

[3] *Id.* ¶ 3; ECF 22-1 at 8.

[4] ECF 22 ¶ 8; ECF 23-1 at 2.

[5] ECF 22 ¶ 10.

[6] ECF 22 ¶ 13.

[7] ECF 22-3 at 202. This endorsement is referred to as the "endorsement for owners, lessees, or contractors with automatic status for other parties when required."

[8] ECF 22-3 at 152. This endorsement is a broadening endorsement adding additional insured parties by contract, agreement, or permit. Citizens uses the term "you" or "your" in their additional insured coverage, which the parties defined as the policy purchaser, Belfi. ECF 22-1 at 13.

[9] ECF 22-5 ¶ 10.

[10] *Id.* ¶ 13.

[11] *Id.* ¶ 13.

[12] *Id.* ¶¶ 1, 2, 3, 4, 26, 36, 46, 52. Mr. Panvini's wife, Christina Panvini, is also a party in Mr. Panvini's complaint seeking damages for loss of consortium.

---

[13] *Id.* 22-5 ¶ 13.

[14] *Id.* ¶¶ 34(i), (l), (n).

[15] *Id.* at 1. The Pennsylvania Workers' Compensation Act prevents him from doing so. PA. STAT. AND CONS. STAT. § 481.

[16] ECF 22 ¶ 14; ECF 22-6 at 2.

[17] ECF 1 at 2.

[18] ECF 22 at 1. Zurich seeks alternative relief asking we declare Belfi is obligated to defend Anderson Construction. *Id.*

[19] ECF 22; ECF 23. Under Federal Rule of Civil Procedure 12(c), "after pleadings are closed but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. Rule 12(c). Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains . . . and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). Rule 12(c) motions are reviewed under the same pleading standard as motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010); *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017); Fed. R. Civ. P. Rules 12(c), 12(b)(6). We take the allegations contained in Zurich's complaint as true and draw all reasonable inferences in favor of Zurich but construe them in the light most favorable to Citizens. *Tatis v. Allied Interstate*, LLC, 882 F.3d 425, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27(3d Cir. 2010)). We give no deference to legal conclusions because we are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[20] ECF 22-1 at 5.

[21] ECF 23-1 at 7.

[22] ECF 22-3 at 183.

[23] *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006).

[24] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 226 (3d Cir. 2005) (citing *Gen. Acc. Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089 (1997)).

[25] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005)). Pennsylvania law applies to the substantive issues in this diversity case. *Travelers Indem. Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997).

[26] *Ramara,* 814 F.3d at 673 (citing *Sikirica*, 416 F.3d at 226).

[27] *Kvaerner*, 908 A.2d at 897.

[28] *Ramara*, 814 F.3d at 673 (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 533 (1987)).

[29] *Id.* at 674 (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 609 (2010)).

[30] *Id.* at 673 (quoting *Kvaerner*, 908 A.2d at 896).

[31] *Kvaerner*, 908 A.2d at 896–97. *But see Zurich Am. Ins. Co. v. Indian Harbor Ins. Co.*, 235 F.Supp.3d 690 (E.D. Pa. 2017). Citizens argues *Indian Harbor* violates Pennsylvania's four corners rule because Judge Surrick considered the terms of a purchase order between the parties. ECF 23-1 at 19–20. Citizens claims "the court impermissibly factored the terms of the contract between LWC [the plaintiff's employer] and Rittenhouse into its determination." *Id.* at 20. Zurich responds the *Indian Harbor* decision is consistent with other Pennsylvania decisions because "the additional insured endorsements in the Citizens Policy require that Citizens review the operative contract to determine coverage." ECF 24-1 at 9. It is unnecessary for us to determine which party's interpretation of *Indian Harbor* is correct because Mr. Panvini sufficiently alleges facts concerning the relationship between him, Belfi, and Anderson Construction. ECF 22-5 ¶¶ 7–13. We need not examine the contract between Belfi and Anderson Construction to analyze the duty to defend. The exact nature of the employer's contractual relationship with the general contractor is not material.

[32] *Ramara*, 814 F.3d 660, 673 (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)).

[33] PA. STAT. AND CONS. STAT. § 481 ("The liability of an employer under this act shall be exclusive and in place of any and all other liability.").

[34] 814 F.3d at 679. In *Ramara*, a garage owner hired a general contractor who in turn hired a subcontractor. The subcontractor obtained general liability insurance. The subcontractor's employees sustained injuries on the job. The employee sued the garage owner and the general contractor, but not his employer, the subcontractor. The subcontractor's insurer declined to defend the garage owner. The owner sued the subcontractor's insurer seeking a judgment declaring the subcontractor's insurer had a duty to defend. Our Court of Appeals upheld the district court's decision finding the subcontractor's insurer had a duty to defend. *Id.* at 681.

[35] *Id.* at 679. Our Court of Appeals described it as an "interpretive constraint." *Id.* at 680.

[36] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 679 (3d Cir. 2016).

[37] 524 F. Supp. 3d 462 (E.D. Pa. 2021).

[38] *Id.* at 464–65.

[39] *Id.* at 465–66.

14

---

[40] *Id.* at 470; *see also Selective Ins. Co. of Am. v. Indian Harbor Ins. Co.*, No. 16-1464, 2016 WL 3457719, at *1 (E.D. Pa. June 23, 2016) ("[T]he Act help[s] explain why [the employee] would not have focused on [the subcontractor] in framing her underlying complaint. [The employee] would not have given much attention to [the subcontractor] because the Act precludes her from suing her former employer.").

[41] *Cincinnati Ins. Co. v. Colony Ins. Co.*, No. 21-0289, 2022 WL 294550, at *1, *8 (E.D. Pa. Jan. 31, 2022).

[42] *Id.* at *2.

[43] *Id.* at *8 (citing *Cont'l Cas. Co. v. Westfield Ins. Co.*, No. 16-5299, 2017 WL 1477136, at *10 (E.D. Pa. Apr. 24, 2017)).

[44] PA. STAT. AND CONS. STAT. § 481.

[45] *Selective*, 2016 WL 3457719, at *3–*4.

[46] ECF 22-3 at 202.

[47] *Ramara*, 814 F.3d at 675.

[48] *Id.* (first citing *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765 (3d Cir. 2009); then citing *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978); and then citing RESTATEMENT (SECOND) OF TORTS § 431 (AM. L. INST. 1965)).

[49] *Id.*

[50] *Id.* (quoting *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 701 (2011)).

[51] *Id.* at 675–76. Our Court of Appeals first addressed the garage owner "act[ing] by and through its agents, servants and/or employees[,]" then addressed additional allegations such as failure to inspect and supervise the work. Our Court of Appeals "[took them] together" and construed them liberally in favor of the owner to find the allegation of proximate causation. *Id.* Chief Judge Goldberg recognized a similar framework in *PECO Energy Co. v. Nationwide Mut. Ins. Co.* where a subcontractor's injured employee sued property owner PECO his injuries and then property owner PECO sued the subcontractor's insurer seeking a declaratory judgment for the subcontractor's insurer to defend property owner PECO. 586 F. Supp. 3d 339, 342 (E.D. Pa. 2022). Chief Judge Goldberg explained "[two] patterns can be gleaned from these decisions: (1) the duty to defend is triggered by something less than an explicit allegation of the primary insured's fault but more than mere silence" and "(2) the outcome in each case is closely tied to the particular allegations in the underlying complaint." *Id*. at 345.

[52] *Ramara*, 814 F.3d at 676.

---

[53] *Id.* at 679.

[54] *Id.* at 680.

[55] *Indian Harbor*, 235 F. Supp. 3d at 697.

[56] *Id.*

[57] ECF 22-5 ¶ 24.

[58] ECF 22-1 at 19.

[59] ECF 23-1 at 18.

[60] ECF 22-5 ¶ 10.

[61] *Ramara*, 814 F.3d at 676 n.11.

[62] *Id.* at 675–76.

[63] *Id.* at 676.

[64] *Id.*

[65] *Indian Harbor*, 235 F. Supp. 3d at 692–93.

[66] *Id.* at 698, 702.

[67] *Liberty*, 524 F. Supp. 3d at 470 –71.

[68] *Id.*

[69]  ECF 22-5 ¶ 44(l).

[70] ECF 22-5 at ¶ 34(h), (i), (l), (n).

[71] ECF 23-1 at 17.

[72] *Ramara*, 814 F.3d at 676.

[73] *Id.*

[74] ECF 22-5 ¶ 44(l).

[75] *Ramara*, 814 F.3d at 676.

[76] ECF 22-1 at 22.

16

---

[77] *Gen. Refractories Co. v. Allstate Ins. Co.*, No. 89-7924, 1994 WL 246375, at *4 (E.D. Pa. June 8, 1994).

[78] *Id.*

[79] *Id.*

[80] *Id.* at *7–*8.

[81] ECF 22-4 at 60.

[82] *Id.*

[83] *White v. Cont'l Ins. Co.*, 233 F. App'x 135, 138 (3d Cir. 2007).

[84] Parties seeking declaratory judgment must present "an actual controversy." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (quoting 28 U.S.C.§ 2201). Such controversies require ripeness, which "determine[s] whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." P*lains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534 (3d Cir. 2017) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). Our Court of Appeals instructs us to apply a three-prong test in determining whether a declaratory judgment action is ripe for adjudication: (1) the adversity of the parties' interest; (2) the conclusiveness of any declaratory judgment on indemnification; and (3) the practical utility of a judgment to the parties at this time. *Step-Saver*, 912 F.2d at 647–50. While the issue of an insurer's duty to defend is ripe before the resolution of the underlying litigation, the issue of indemnification is not. "[A]n insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify . . . ." *Ramara*, 814 F.3d at 673. "[C]ourts refrain from adjudicating whether an insurer has duty to indemnify the insured until after the insured is found liable for damages in the underlying action." *Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 353 (D. Del. 2009). "This general proposition rests on the reasoning that while an underlying action is pending, the issue of indemnification is not yet a controversy between the parties, and thus, does not meet the Constitutional requirement that federal courts may only adjudicate actual cases or controversies." *Id.* (citing U.S. CONST. ART. III, § 2). Zurich alleges Mr. Panvini's state court litigation is ongoing. ECF 1 ¶ 55 ("Zurich . . . continues to provide a defense to [Anderson Construction] in the Panvini Litigation."); ¶ 56 ("Zurich . . . continues to expend significant amounts of money to defend [Anderson Construction] in the Panvini Litigation."). As the underlying litigation is still pending, we dismiss Zurich's claim concerning indemnification without prejudice as unripe. *See Access Ins. Co. v. Carpio*, 861 F. Supp. 2d 539, 543 n.5 (E.D. Pa. 2012) ("[A] court may sua sponte dismiss a case on grounds of mootness or ripeness.").